United States District Court
Southern District of Texas
**ENTERED**
January 14, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LUIS LEBRON, | § |
| | § |
| Plaintiff, | § |
| | § |
| V. | § CIVIL ACTION NO. H-18-3935 |
| | § |
| THE BOEING COMPANY EMPLOYEE | § |
| HEALTH AND WELFARE PLAN, | § |
| NATIONAL UNION FIRE INSURANCE | § |
| COMPANY OF PITTSBURGH, PA, and | § |
| AIG CLAIMS, INC., | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred to the undersigned Magistrate Judge is Defendants National Union Fire Insurance Company of Pittsburgh, PA and AIG Claims, Inc.'s Motion for Summary Judgment (Document No. 15) and Plaintiff Luis Lebron's Cross Motion for Summary Judgment (Document No. 16). Having considered the motions for summary judgment, the responsive briefing, the facts that are not in dispute, the policy provisions in the AD&D (accidental death and dismemberment) policy that Plaintiff obtained through his employer for his spouse, Barbara Lebron, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment be DENIED.

### I.   Background

This is an insurance coverage dispute, where the facts are generally uncontested. Plaintiff Luis Lebron obtained accidental death and dismemberment coverage for his spouse, Barbara Lebron,

through his employer sponsored employee benefit plan. The Supplemental AD&D policy provision at issue provides, in relevant part:

> The Supplemental AD&D Plan will not pay benefits for death or loss caused by, in whole or in part, any of the following:
>
> * * *
>
> Illness, sickness, disease, bodily or mental infirmity, medical or surgical treatment (unless treating a covered injury), or bacterial or viral infection, regardless of how contracted (except bacterial infection resulting from an accidental cut or wound or accidental food poisoning).

(Document No. 15-1 at 124). After Barbara's death on December 11, 2017, Plaintiff filed a claim for benefits under the Supplemental AD&D policy. Defendant AIG Claims, Inc. ("AIG"), acting as claims administrator for Defendant National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC"), denied the claim on January 19, 2018. Plaintiff administratively appealed that adverse benefits decision to the ERISA Appeals Committee of NUFIC, which also decided, on June 11, 2018, that benefits were not available. Plaintiff, having exhausted his administrative remedies, filed this lawsuit on October 19, 2018, asserting a denial of benefits claim under ERISA, 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought-- (1) by a participant or beneficiary--(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

Both sides have filed Motions for Summary Judgment, with Plaintiff arguing that he is entitled to the death benefit provided for in the Supplemental AD&D policy, and Defendants AIG and NUFIC arguing that there is no coverage under the above-referenced provision of the Supplemental AD&D policy.

2

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). This summary judgment standard applies in ERISA cases such as this, *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014), *but see Koch v. Metropolitan Life Ins. Co.*, Civil Action No. 7:18-cv-00154-O, 2019 WL 6329383 *4 (N.D. Tex. Nov. 26, 2019) (finding that *a de novo* review of the record should not be made in the context a motion for summary judgment where there are underlying disputed issues of fact), even though it is for the Court to determine, in an appeal-like review, whether benefits were properly denied. That appeal-like review is conducted *de novo* unless the ERISA plan gives valid and lawful discretionary authority to the plan administrator to decide claims, in which case the review is for abuse of discretion. *Ariana M v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018)

When the review is *de novo*, the court must "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing" an entitlement to benefits. *Pike v. Hartford Life & Accident Ins. Co.*, 368 F.Supp.3d 1018, 1030 (E.D. Tex. 2019). When the review is for abuse of discretion, the court must determine whether there is substantial evidence to support the decision and whether the decision is arbitrary and capricious. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) ("A plan administrator abuses its discretion where the decision is not 'based on evidence, even if disputable, that clearly supports the basis for its denial.'").

## III.     Discussion

As an initial matter, the parties dispute whether the benefits decision made the basis of this case should be reviewed *de novo* or for an abuse of discretion. Defendants argue that the review should be for abuse of discretion given the ERISA plan's delegation of discretionary authority to NUFIC to decide claims. Plaintiff argues that review should be *de novo*.

In *Ariana M,* the Fifth Circuit recently decided that *de novo* review was the "default" standard of review applicable to both factual and legal bases of an ERISA benefits decision. That default standard does not apply if the ERISA plan contains a valid and/or lawful delegation of discretionary authority, in which case an abuse of discretion standard applies. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir.), *cert. denied,* 140 S.Ct. 186 (2019); *Long v. Aetna Life Ins. Co.*, 404 F.Supp.3d 1012, 1017 (N.D. Tex. 2019). While *Ariana M* changed the landscape of ERISA review in the Fifth Circuit, it did not address, decide, or provide any guidance for determining whether an ERISA plan contains a valid and lawful delegation of discretionary authority. In addition, neither *Ariana M,* nor any Fifth Circuit case following it, has identified or discussed whose burden it is to prove whether an ERISA plan's delegation of discretionary authority is valid and/or lawful.

Here, there is a delegation of discretionary authority in the ERISA plan, which provides with respect to the Supplemental AD&D policy: "The decision of the service representative are final and binding. Benefits will be paid under the plan only if the Committee decides in its discretion that you have met the eligibility and participation requirements and the service representative has determined that you are entitled to the benefits." (Document No. 15-1 at 136). Whether that delegation is valid and/or lawful given the limits on such delegations in the Texas Insurance Code, TEX. INS. CODE

4

§ 1701.062(a), has not been addressed by the parties. Nor is there any way for the Court to accurately determine, from what has been submitted and what is in the record, whether that delegation is valid and/or lawful because there is nothing that indicates or shows whether Texas law even applies to the Supplemental AD&D policy. *See e.g., Rittinger v. Healthy Alliance Ins. Co.*, 914 F.3d 952, 955 (5th Cir. 2018) ("And even though Texas Insurance Code § 1701.062 bans insurers' use of delegation clauses in Texas, Missouri law governs this case. As Anthem observes (and Rittinger fails to contest), this case involves a plan sold in Missouri by a Missouri insurer to a Missouri employer. Moreover, the Certificate of Coverage specifically states that the 'laws of the state in which the Group Contract was issued [Missouri] will apply.' *Ariana M.*, therefore, does not control."); *Long*, 404 F.Supp.3d at 1017, n. 4 (finding that lawfulness and/or validity of the delegation under Texas law was not at issue because the policy "was issued in Arizona to an employer in Arizona and 'is governed by applicable federal law and the laws of Arizona'"). It is here, therefore, where the question of who has the burden to demonstrate the existence of a valid and/or lawful delegation of discretionary authority becomes important: if the burden is on Defendants to establish that the delegation in the ERISA plan was valid and/or lawful, they have certainly not met it on this record; likewise, if the burden is on Plaintiff to show that the delegation in the ERISA plan was not valid, lawful or enforceable, Plaintiff has also not met it. As the standard of review in a case like this is particularly important, and as the Fifth Circuit has only determined that a *de novo* standard is the default standard, the undersigned concludes that it should be for the Defendants, who are relying on the ERISA plan's delegation of discretionary authority, to prove that such a delegation was valid and/or lawful. *Cf. Hunter v. Baylor Health Care System*, Civil Action No. 3:18-CV-0881-N, 2019 WL 3818838 *2 (N.D. Tex. Aug. 14, 2019) ("In *Ariana M*, the Fifth

Circuit held that section 1701.062 results in *de novo* review. The Court holds that Hunter has the burden of establishing that section 1701.062(a) applies here."). Moreover, because the validity or lawfulness of the delegation cannot be determined on this record, and because the courts that have considered the applicability of section 1701.062 of the Texas Insurance Code have found that it does render a delegation of discretionary authority unenforceable, *see Koch*, 2019 WL 6329383 at *4 (finding that "the Texas Insurance Code prevents application of the Plan's discretionary clause"); *Woods v. Riverbend Country Club, Inc.*, 320 F.Supp.3d 901, 909 (S.D. Tex. 2018) (finding the plan's discretionary clause unenforceable under Texas law),[1] the default *de novo* standard will be applied herein. Using that *de novo* standard, the undersigned concludes, for the reasons set forth below, that Plaintiff, based on the undisputed facts related to the death of Barbara Lebron, is not entitled to benefits under the Supplemental AD&D plan.

"When the Court reviews the administrator's decision de novo—just as when the administrator reviews the initial claim—the claimant 'bears the burden of proving by a preponderance of the evidence' that [he] is entitled to benefits." *Koch,* 2019 WL 6329383, at *7. Here, that burden has not been met on the facts that are not in dispute.

Barbara Lebron died on December 11, 2017. At the time of her death she was in end stage renal failure, she was on dialysis, and she had two catheters, one in the right inguinal region, and the other in the right subclavian region, for dialysis. She also was taking a blood thinner, Warfarin. On

---

[1] In other cases in which a *de novo* standard of review has been applied, the parties agreed on the standard of review. *E.g., Brandt v. Unum Life Ins. Co. of America*, 377 F.Supp.3d 683, 691 (S.D. Tex. 2019) (applying *de novo* standard where Defendant conceded in its briefing that a de novo standard should be applied); *Pike v. Hartford Life and Accident Ins. Co.*, 368 F.Supp.3d 1018, 1028-29 (E.D. Tex. 2019) (parties agreed that *de novo* standard applied); *Chavez v. Standard Ins. Co.*, Civil Action No. 3:18-CV-2013-N, 2019 WL 1767000 *2 (N.D. Tex. Apr. 22, 2019) (parties agreed that *de novo* standard applied).

the date of her death, Barbara was scheduled for dialysis. When she did not arrive for dialysis, her husband (Plaintiff) was called by the dialysis center. Plaintiff returned to their home where he found Barbara, by herself, in a pool of blood. A police investigation, along with the findings of the medical examiner, concluded that Barbara Lebron had died of "exsanguination." On the death certificate dated December 19, 2017, Barbara Lebron's cause of death was listed as "exsanguination from cut dialysis catheter placed for treatment of end-stage renal disease associated with hypertensive cardiovascular disease;" the manner of death was indicated as an "accident"; and the manner in which the injury occurred was described as "inadvertently cut dialysis catheter tubing with scissors while changing bandaging." (Document No. 15-1 at 205). In other words, the determination was made – and not disputed by anyone – that Barbara Lebron bled to death (exsanguination) when, in connection with changing the bandage in and around the inguinal catheter that had been placed for dialysis, she inadvertently cut the catheter tubing and was unable to stop the bleeding.

In their Motion for Summary Judgment, Defendants maintain that the decision to deny Plaintiff benefits is consistent with the Supplemental AD&D policy provision set forth above insofar as Barbara's death was caused, in whole or in part, by both her dialysis treatment for end stage renal failure and her use of the blood thinner Warfarin. Plaintiff, in contrast, maintains, that it was Barbara's accidental cutting of the inguinal catheter which caused her death, and that her own changing of her bandaging around the catheter is not, and cannot be considered, "medical treatment." In addition, Plaintiff maintains that no one has attributed or correlated Barbara's use of the blood thinner Warfarin with her death of "exsanguination."

Defendants' position that Barbara's death was caused, in whole or in part, by her illnesses of end stage renal failure and/or hypertensive cardiovascular disease is not supported by any evidence

7

in the record. Barbara <u>was</u> in end stage renal failure and also suffered from hypertensive cardiovascular disease, but her death was not caused by either condition. Instead, as is consistent throughout the record, Barbara's death was caused by the accidental cutting of her inguinal catheter and her inability to stop the bleeding. *See* Death Certificate (Document No. 15-1 at 205); Medical Examiner's External Report (Document No. 15-1 207-211). The fact that Barbara had a catheter for dialysis purposes, and needed dialysis because of her end stage renal failure, does not render her end stage renal failure the "cause" of her death. Similarly, the fact that Barbara was taking a blood thinner (Warfarin) has not been linked, by any evidence in the record, to her death by exsanguination. While it may seem axiomatic that Barbara's use of a blood thinner would have contributed to her loss of blood following the accidental cutting of her inguinal catheter, there is simply nothing in the record, evidence-wise, that the Warfarin caused, in whole or in part, Barbara's death.

As for Defendants' position that the accidental cutting of the inguinal catheter was associated with Barbara's "medical treatment" because it was related to Barbara having an inguinal catheter for her dialysis and her need to change the bandages associated therewith, that position aligns with the Fifth Circuit's explanation of what "medical treatment" entails in *Barkerding v. Aetna Life Ins. Co.*, 82 F.2d 358, 359 (5th Cir. 1936) (emphasis added) "Medical and surgical treatment mean what is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it. *It includes the things done by the patient to carry out specific directions given for these ends by a physician.*" Barbara's changing of a bandage in and around her dialysis catheter, in preparation and/or facilitation of dialysis, falls within the Fifth Circuit's pronounced meaning of "medical treatment" in *Barkerding*. In addition, exsanguination is a known complication of hemodialysis, *see* James R. Gill, Kara Storck, and Sean Kelly, *Fatal exsanguination*

8

*from hemodialysis vascular access sites*, 8 FORENSIC SCIENCE MEDICAL PATHOLOGY, 259-262 (2012) (Document No. 15-1 at 212-215), notwithstanding the two medical opinions in the record that Barbara's death by exsanguination was not an expected medical complication of her dialysis treatment (Document No. 15-1 at 216, 217).

Given that Barbara's changing of her bandage falls within the meaning of "medical treatment" in this Circuit, and given that the accidental cutting of her inguinal catheter was associated with that "medical treatment," Plaintiff is not, under *de novo* review, entitled to benefits under the Supplemental AD&D policy. In addition, even under the more stringent abuse of discretion review, if it were found to apply, Plaintiff would not be entitled to benefits under the Supplemental AD&D policy.

## IV. Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiff is not entitled to benefits under the Supplemental AD&D policy at issue herein, the Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 15) be GRANTED and Plaintiff's Motion for Summary Judgment (Document No. 16) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(c), FED. R. CIV. P. 72(b). Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. An*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent

plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 13th day of January, 2020.

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE